IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARC S. CASON, SR. #180-571
        Plaintiff          :

        v.              :   CIVIL ACTION NO. JFM-06-1953

MDPSCS, et al.,              :
        Defendants

## MEMORANDUM

On July 21, 2006, plaintiff, a Division of Correction ("DOC") prisoner housed at the Roxbury Correctional Institution in Hagerstown ("RCI"), filed this 42 U.S.C. § 1983 civil rights complaint seeking money damages and alleging that he has been denied appropriate medical treatment for injuries as a result of two falls from his wheelchair during the time he was housed at the Western Correctional Institution ("WCI").[1] Specifically, he alleges that on June 2, 2005, a wheel came off his wheelchair, causing him to fall and injure his neck and shoulder. He also alleges that on July 21, 2005, he fell out of his wheelchair and sprained his left wrist. He claims that although he was given another wheelchair to use, his personal wheelchair was never repaired by State corrections officials. He also complains that the walkways at WCI were poorly designed for wheelchair use. Plaintiff sues the private health care provider, Correctional Medical Services, Inc. ("CMS") and the Maryland Department of Public Safety and Correctional Services ("MDPSCS," hereinafter "the State"), but fails to name specific individuals responsible for his alleged injuries.[2]

CMS and the State have filed motions to dismiss or, in the alternative, for summary judgment

---

[1]      At all times relevant to this lawsuit, plaintiff was housed at WCI. He was transferred to RCI on November 18, 2005. Paper No. 12, Exhibit A, ¶¶ 1 and 14.

[2]      Defendant Correctional Medical Services, Inc. ("CMS") became the health care provider at WCI on July 1, 2005, and thus was not involved in plaintiff's health care for the first weeks following the June 2, 2005, incident. Plaintiff has never named the corporate entity in charge of WCI health care at the time of his first alleged fall.

(Paper Nos. 12 and 16).  Plaintiff has not responded to these motions, but filed affidavits reiterating his version of the facts of the case.  (Paper Nos. 15 and 18).  For reasons set forth herein the dispositive motions, treated as motions for summary judgment, shall be granted and the case dismissed without a hearing.  *See* Local Rule 105.6.

## Standard of Review

Plaintiff appears to state three claims.  First, he alleges that he did not receive adequate and prompt medical attention after both falls.  Second, he alleges that the falls occurred because of the poor condition of WCI's asphalt walkways.  Third, he claims that WCI did not provide him with safe wheelchairs after his own wheelchair was taken for repair.  The first claim is based upon an alleged violation of the Eighth Amendment, while the remaining claims allege at most the common law tort of negligence.

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of showing that there is no genuine issue as to any material fact.  No genuine issue of material fact exists, however, if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof.  *See  Celotex*, 477 U.S. at 322-323.  Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

A prisoner presenting a denial of medical care claim in violation of the Eighth Amendment

must prove two essential elements.  First, he must satisfy the "objective" component by illustrating a serious medical condition.  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998).  If this first element is satisfied, the prisoner must then prove the subjective component of the Eighth Amendment standard by showing deliberate indifference on the part of prison officials or health care personnel.  *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06).  "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  Medical personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. at 837. Healthcare staff are not, however, liable if they "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id*. at 844; *see also Johnson v. Quinones*, 145 F.3d at 167.

When alleging a constitutional failure-to-protect claim under the Eighth Amendment, a prisoner must present evidence that a prison official "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Thus, for a prison official to be truly "subjectively reckless," he or she must have knowledge both of the risk of harm and also that conduct is inappropriate in light of that risk.  *See Rich v. Bruce,* 129 F.3d 336, 339-40 (4th Cir. 1997).

Preliminarily, the court notes that plaintiff has failed to name the proper party defendants. CMS and the Maryland Department of Public Safety and Correctional Services have no vicarious liability for injuries allegedly caused by staff members under the facts alleged herein.  *See Monell v. Department of Social Services*, 436 U.S. 658, 691-94 (1978); *Baker v. Lyles*, 904 F.2d 925, 929 (4th Cir. 1990).  Furthermore, the claims of negligence leveled against unnamed MDPSCS employees are not cognizable in a federal action premised solely on a violation of civil rights.  *See Daniels v. Williams*, 474 U.S. 327 (1986).[3]

The court's obligation to review plaintiff's Eighth Amendment allegations of inadequate medical care, however, does not end as a result of his insufficient pleading.

## Analysis

As a result of a stab wound to the neck sustained in 1998, plaintiff suffers quadriparesis, a weakness in all four extremities.  Plaintiff has limited use of his hands, no use of his legs, and is unable to move about without the use of a wheelchair. ( Paper No. 12, Exhibit A, ¶ 3).

### The June 9, 2005, Incident

At approximately noon on June 9, 2005, Nurse Tracy Gaumer responded to a call that plaintiff had fallen from his wheelchair.[4] Gaumer found plaintiff outside the dining hall, lying partly on his left side and partly on his back.  He was alert, oriented to time, place and person, and not bleeding.  Gaumer immobilized plaintiff on a back board, placed him on a stretcher, and took him to the dispensary.  Plaintiff complained of pain on the right side of the head, the back of the neck,

---

[3]     Plaintiff may of course choose to seek money damages arising out of negligent acts from any responsible parties by means of state administrative and court proceedings.

[4]     Plaintiff claims the fall occurred June 2, 2005; the uncontroverted medical record, however, demonstrates that the fall occurred on June 9, 2005.  Paper No, 12, Exhibit B, medical records at p. 01.

-4-

the right shoulder, and the lower back. He could move his left arm after without difficulty but complained of pain when moving the right arm.  He also complained of leg and back spasms. Gaumer saw no open areas, abrasions, contusions, or hematomas.  (*Id.*, Exhibit A, ¶ 4).

Dr. Tessema examined plaintiff and the wheelchair about an hour later.  The examination of plaintiff revealed no bruises, deformities, swelling, or head trauma, and led the doctor to conclude that plaintiff's complaints of neck, shoulder, side, and back pain were subjective.  Nonetheless, Tessema ordered x-rays of the cervical and lumbar spine and right shoulder, prescribed Motrin to relieve pain, and advised plaintiff to return to the clinic as needed. (*Id.*).  X-rays taken that same day revealed no evidence of fractures or dislocations in any of the areas.  (*Id.*, Exhibit A, ¶ 6). Tessema noted that the right front wheel had separated from the chair, but that upon reinsertion, the wheel remained connected to the chair and did not fall off until the wheelchair was lifted from the ground. Tessema further noted that even with the wheel missing, the wheelchair remained stable and did not tip over when its footrest touched the ground.  Tessema ordered another wheelchair for plaintiff to use while the damaged chair (plaintiff's own) was repaired.  (*Id.*, Exhibit A, ¶ 5).

In a sick call request dated June 11, 2005, plaintiff complained that the fall caused a neck sprain.  The form was received by medical personnel on June 15, 2005, and an appointment for June 18, 2005, was scheduled.  Although medical staff called plaintiff's housing unit to inform them about the appointment, plaintiff did not show up.  (*Id.*, Exhibit A, ¶ 7).

On June 20, 2005, plaintiff submitted another sick call request, complaining of lower back pain and soreness and stiffness in the neck.  Examination revealed no bruising or swelling.  Plaintiff received Tylenol for pain and analgesic balm.  Salsalate, an aspirin-like medication used to reduce pain and inflammation for those with muscle strains and sprains, was ordered on June 24, 2005. (*Id.*,

Exhibit A, ¶ 8).

Plaintiff did not submit additional sick call requests during June, 2005.  On July 1, 2005, CMS replaced Prisoner Health Services, Inc. ("PHS") as the contractual health care provider at WCI. (*Id*., Exhibit A, ¶ 9).

### The July 21, 2005, Incident

Although plaintiff claims that he injured his left wrist after suffering an additional fall from his wheelchair on July 21, 2005, no sick call requests or medical records substantiate such claim.

Plaintiff did submit a sick call request dated July 9, 2005, requesting renewal for Salsalate and requesting something for back, neck and shoulder pain.  Medical personnel received the request on July 11, 2005, at which time Nurse Kathy R. Wiley wrote a separate sick call request form relating to the renewal of the prescription and referred the complaints of pain to Dr. Tessema.  (*Id*., Exhibit A, ¶ 10).  Nurse Wiley examined plaintiff on July 14, 2005, and listed complaints of neck, lower back, and left ring finger pain.  No objective signs of injury were found.  Plaintiff was given a tube of A-balm and enteric-coated aspirin for pain and referred to Dr. Tessema.  (*Id*.).

On July 18, 2005, Dr. Tessema examined plaintiff and noted no excess warmth, tenderness or deformity of the finger.  The Salsalate prescription was renewed.  (*Id*., Exhibit A, ¶ 11).

No further complaints related to the alleged falls were registered by plaintiff until November 10, 2005, when he submitted a sick call request to speak with Dr. Tessema regarding pain medications.  Salsalate was renewed, and plaintiff was referred to the Chronic Care Clinic.  Before he could be seen again, however, he was transferred to RCI.  (*Id*., Exhibit A, ¶¶ 12-14).

**Conclusion**

It appears that plaintiff may have fallen from his wheelchair on June 9, 2005, more than three weeks prior to CMS's assumption of health care responsibilities at WCI.  Assuming plaintiff has satisfied the first element to show an Eighth Amendment claim by demonstrating serious medical injuries resulting from this fall, he has failed to prove the second element by showing that the treatment received for his injuries – whether provided by PHS or CMS – was so inadequate  as to meet the deliberate indifference standard announced in *Estelle*.  Plaintiff's acute injuries were promptly treated, pain medications and x-rays were provided, and he was examined repeatedly by nurses and a physician.  Health care providers have concluded that his injuries do not require all of the diagnostic tests and pain medication he seeks.  Mere questions of medical judgment are not subject to judicial review, *see Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975), and the "mere failure to treat all medical problems to a prisoner's satisfaction" is insufficient to support a civil rights claim under § 1983.  *Peterson v. Davis*, 551 F. Supp. 137, 146 (D. Md. 1982).  *accord, Goff v. Bechtold*, 632 F.Supp. 697, 698 (S.W. W. Va. 1986) (prisoner cannot be ultimate judge of what medical treatment is necessary or proper in his case).   For this reasons, plaintiff's Eighth Amendment claims against the contractual health care provider fails.

As previously noted, plaintiff has at most alleged claims of negligence on the part of unnamed DOC officials for their alleged failure to provide him a safer wheelchair and keep the walkways around the prison campus in better repair. These state tort claims cannot proceed in a federal civil rights action

For the aforementioned reasons, defendants' motions for summary judgment shall be

granted.  Judgment is entered in favor of defendants and against plaintiff.  A separate Order follows.


Date: March 14, 2007                    /s/_____
                                        J. Frederick Motz
                                        United States District Judge